# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| JANE DOE, individually and<br>On behalf of others similarly situated, | )<br>)<br>) | |
| Plaintiff, | ) | Case No. 3:20-cv-00430 |
| v. | )<br>)<br>) | |
| DONALD J. TRUMP, et al., | )<br>) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF THE
## UNITED STATES' MOTION TO DISMISS OR,
## IN THE ALTERNATIVE, STAY THIS ACTION

### Introduction

Defendant, the United States of America, hereby submits the following

Memorandum in Support of its Motion to Dismiss, Or in the Alternative, Stay

Plaintiff's Class Action Complaint ("Complaint").[1]

Plaintiff alleges in her Complaint[2] that she is seeking a declaration by the

Court that 26 U.S.C. § 6428(g)(1)(B), enacted by § 2201 of the Coronavirus Aid,

---

[1] In her Complaint, plaintiff acknowledges that Jane Doe is not the Plaintiff's actual name, but is a fictitious name for an actual person.  (Compl. ¶ 2).

[2] Plaintiff has not established that she has properly served the summons and complaint under Fed. R. Civ. P. 4(i). Therefore, the United States reserves the right to seek dismissal pursuant to Fed. R. Civ. P. 12(b)(5) if service is not complete on or before August 4, 2020.

Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281, 337 (the "CARES Act") is unconstitutional and unenforceable. (Compl. ¶ 64).

As set forth in more detail below, the present case is one of seven substantially similar class action cases currently pending among six different federal districts.  In each of the seven cases, both the relief sought and the class of plaintiffs on whose behalf the cases have been brought are described in a substantially similar manner.  Four of these cases, including the instant case, have been filed by the same law firm.  Further, this case is not the first of the seven cases to have been filed, nor is it even the first of the four filed by the same firm. Thus, the Court has the inherent authority to dismiss or stay this case as established in the first-to-file doctrine, to avoid wasteful and duplicative litigation.

Class action cases are resource intensive for both the courts hearing them and the parties litigating them.  "The first-to-file rule is intended to serve the purpose of promoting efficiency … and should not be disregarded lightly.  Courts applying the first-to-file rule should be driven to maximize economy, consistency, and comity."  *Trevino v. Golden State FC, LLC,* 2019 WL 2710662, at *5 (E.D. Cal. 2019).

## The CARES Act

On March 27, 2020, the President of the United States signed the CARES Act into law.  The CARES Act, as relevant here, added § 6428 to the Internal

Revenue Code (Title 26 U.S.C.).  Section 6428 authorizes certain individuals to claim a tax credit (the "CARES Act Credit") for their 2020 tax year.  An individual's eligibility for a CARES Act Credit and the amount of the credit are based on various factors, including filing status, adjusted gross income, and the number of qualifying children, if any.  *See* 26 U.S.C. § 6428(a) and (c).

No CARES Act Credit, however, is allowed under § 6428 to an individual who fails to provide a valid identification number for herself, any qualifying children, or her spouse, if filing jointly.[3]  26 U.S.C. § 6428(g)(1) and (2).  A valid identification number means a Social Security Number (as defined in 26 U.S.C. § 24(h)(7)) or in the case of a qualifying child who is legally placed with an individual for adoption, an adoption taxpayer identification number.  26 U.S.C. § 6428(g)(2).

Pursuant to § 6428(f)(3)(A), the IRS is directed to "refund or credit any overpayment attributable to this section as rapidly as possible."  The IRS, however, is authorized to make advance refunds only through December 31, 2020.  *Id.*  In accordance with § 6428(f), the IRS has begun issuing advance refunds of the CARES Act Credit.  *See generally* https://www.irs.gov/coronavirus/economic-

---

[3] A married couple may provide only one spouse's Social Security Number to claim a CARES Act Credit on a joint return if at least one of the spouses was a member of the Armed Forces of the United States at any time during the taxable year.  26 U.S.C. § 6428(g)(3).

impact-payment-information-center; *https://perma.cc/YUQ3-N7NG* (last visited May 9, 2020).

The advance refunds are computed based on the information available to the IRS. The IRS may first use information from a taxpayer's 2019 tax year. 26 U.S.C. § 6428(f)(1). If no 2019 tax return was filed, the IRS may use information from a taxpayer's 2018 tax year. 26 U.S.C. § 6428(f)(5). If no 2018 or 2019 tax return was filed, the IRS may use information provided to it on a 2019 Form SSA-1099, Social Security Equivalent Benefit Statement. *Id.*

Section 6428 does not confer upon eligible individuals any justiciable right to an advance refund. Nor does it confer any right to receive an advance refund at a particular time or in a particular manner. Section 6428(a) provides that an individual's CARES Act Credit "shall be allowed as a credit against the tax imposed by subtitle A for the first taxable year beginning in 2020." There is no corresponding mandate that the IRS immediately issue a CARES Act Credit in the form of an advance refund.

If the IRS does not issue an advance refund to an individual who will eventually qualify for a CARES Act Credit, there is no mechanism in the statute by which the individual can force the IRS to do so. Instead, the statute contemplates that any advance refund will be reconciled with the CARES Act Credit reported on the taxpayer's 2020 tax return. *See* 26 U.S.C. § 6428(e) (providing that the amount

of any CARES Act Credit will be reduced (but not below zero) by the aggregate amount of any advance refunds and credits made or allowed to the taxpayer); and 26 U.S.C. § 6428(f)(3)(A) (providing that any advance refunds and credits will be made by December 31, 2020).  Indeed, many individuals who will qualify for a CARES Act Credit have not yet received an advance refund.  Some of these individuals will have to wait until 2021 to claim and receive the full credit.[4]

### Plaintiff's Complaint

On May 6, 2020, Plaintiff Jane Doe filed the present action alleging in her Complaint that the United States has unconstitutionally deprived her of rights, privileges, benefits and/or protections provided to citizens of the United States.

Plaintiff alleges in her Complaint that "[a]ny family that files a joint tax return where one of the spouses has a Social Security number and the other has an Individual Taxpayer Identification Number ("ITIN"), which the Internal Revenue Service issues to workers who lack Social Security numbers, cannot receive a Stimulus Check–unless one spouse is a member of the U.S. Armed Forces." (Compl. ¶ 34; citation omitted).

---

[4] *See* https://www.irs.gov/coronavirus/economic-impact-payment-information-center; *https://perma.cc/YUQ3-N7NG*; Q&A 29 ("If you did not receive the full amount to which you believe you are entitled, you will be able to claim the additional amount when you file your 2020 tax return.") (last accessed May 11, 2020).

In regard to herself, Plaintiff alleges that she is a U.S. citizen and possesses a Social Security Number.  Plaintiff also alleges that she earns less than $75,000 in adjusted gross income and that her children are also U.S. citizens.  Plaintiff asserts, however, that she is excluded from the government's $2 trillion coronavirus financial relief package because she files her taxes jointly with her spouse (hereinafter referred to collectively as a 'Mixed-Status Family'), an immigrant who does not have a Social Security number."  (Compl. ¶ 37).

Plaintiff also alleges that "[b]ut for her spouse lacking a Social Security Number, plaintiff would have received a Stimulus Check for herself and her children under the CARES Act." (Compl. ¶ 41).[5]

Plaintiff further alleges that "[t]he CARES Act and Defendants' failure to provide Plaintiff her Stimulus Check disparages Plaintiff's choices and diminishes her personhood.  By denying Plaintiff and other Mixed-Status Families Stimulus Checks, the CARES Act and Defendants force Plaintiff and her children to suffer the stigma of knowing her family is adversely treated compared to other families. The CARES Act and Defendants humiliate Plaintiff and the children of Mixed-

---

[5] If the Plaintiff in the present case has already filed a joint federal income tax return with her spouse for the tax year 2019, she and her spouse have until July 15, 2020 to file amended individual returns.  If Plaintiff and her spouse have not yet filed a joint or individual returns for 2019, they have until July 15, 2020 to file original individual returns.

Status Families, including hers, by treating them adversely as compared to other families." (Compl. ¶ 54).

In Count I of her Complaint, Plaintiff asserts a claim under the Fifth Amendment of the United States Constitution for Substantive Due Process alleging "[d]iscrimination based on the fundamental right to marry." (Compl. pg. 16). Count I of her Complaint also asserts a claim for Equal Protection under the Fifth and Fourteenth Amendments to the United States Constitution. (Compl. pg. 18). Specifically, Plaintiff asserts that "26 U.S.C. § 6428, on its face and as applied to Plaintiff, violates the equal protection guarantee of the Fifth Amendment by burdening Plaintiff's fundamental right to marry in a way that offends basic principles of justice and equality." (Compl. ¶ 85). Plaintiff also asserts in Count I that "Defendants discriminate against Plaintiff on the basis of the alienage of her spouse." (Compl. ¶ 96).

In Count II of the Complaint, Plaintiff asserts violations of the First Amendment. (Compl. pg. 21). Specifically, Plaintiff asserts that under § 6428(g)(1)(B), "the federal government treats Plaintiff, who is legally married, differently than other married couples simply because her spouse lacks a social security number." (Compl. ¶ 111). Plaintiff also alleges that "[a]s a proximate result of Defendants' conduct, Plaintiff suffered injury to her constitutional rights under the First Amendment's Freedom of Association Clause." (Compl. ¶ 118).

In Count III of the Complaint, Plaintiff seeks a Temporary Restraining Order "TRO"), a Preliminary and a Permanent Injunction; and Declaratory Relief Against All Defendants prohibiting enforcement of the statute as currently written. (Compl. pg. 23).

### The Chronology of the Complaints

In the present case, Plaintiff is represented by the law firms of Blaise & Nitschke, and Khalaf & Abuzir (together, "Blaise & Nitschke") which are both located in Chicago, Illinois.  On April 24, 2020, Blaise & Nitschke filed its first suit seeking to have 26 U.S.C. § 6428(g)(1)(B) declared unconstitutional in the Northern District of Illinois (Case No. 1:20-cv-02531).

The Complaint in the present case was filed in the Western District of Wisconsin on May 6, 2020.  On that same day, Blaise & Nitschke filed a third suit in the Central District of California (Case No. 8:20-cv-858).[6]  Finally, on May 8, 2020, Blaise & Nitschke filed a fourth suit in the Eastern District of Wisconsin (Case No. 2:20-cv-00704).

---

[6] In two of the Blaise & Nitschke lawsuits, *John Doe v. Trump*, No. 1:20-cv-02531 (N.D. Ill.) and *Jane Doe v. Trump,* No. 8:20-cv-858 (C.D. Cal.), Blaise & Nitschke has filed "emergency motions" seeking temporary restraining orders.  Both motions are currently pending.

**The Non-Blaise & Nitschke Complaints**

In addition to the four Blaise & Nitschke Complaints contesting the constitutionality of § 6428, there are three additional Complaints presently pending in U.S. District Courts which assert essentially the same causes of action as are contained in the Blaise & Nitschke Complaints (the "non-Blaise & Nitschke Complaints").  The three non-Blaise & Nitschke Complaints and the dates they were filed are:

1)   *Jerysse Uzoegwu v. Steven T. Mnuchin*, Case No. 1:20-cv-3264 (S.D.N.Y.), filed April 24, 2020;

2)   *Ivania Amador v. Steven T. Mnuchin*, Case No. 1:20-cv-01102 (D. Md.), filed April 28, 2020; and

3)   *R.V., a minor, by and through his mother and next friend v. Steven T. Mnuchin*, Case No. 1:20-cv-1148 (D. Md.), filed May 5, 2020.

**The Similarity of the Complaints**

On its website, Blaise & Nitschke affirmatively states that the four suits it has filed are essentially the same by describing the suits in two brief paragraphs as follows:

> The complaints we've filed seek to have a portion of the CARES Act declared unconstitutional, as it discriminates against individuals who are entitled to their stimulus payments because they filed joint tax returns with spouses who use an Individual Tax Identification Number (ITIN) to pay their taxes.  ITINs are issued by the Internal Revenue Service to non-citizens who lack a social security number.

We allege that this section of the CARES Act violates these individuals' fundamental rights to due process and equal protection of the laws, under the United States Constitution.

(Blaise & Nitschke, https://www.blaisenitschkelaw.com/news-media/; https://perma.cc/Q9LX-8WMY) (last visited June 5, 2020).[7]  A page-by-page comparison of the Complaints confirms the similarity of the Complaints and suggests that they were all based on a common template.

While the non-Blaise & Nitschke Complaints do not appear to have used the same template that was used to produce the Blaise & Nitschke Complaints, all of the Complaints (the Blaise & Nitschke Complaints and the non-Blaise & Nitschke Complaints) raise essentially the same allegations against the United States:

- Section 6428 of the Internal Revenue Code provides an advance refund payment to eligible individuals;
- Eligible individuals must be U.S. citizens, permanent residents, or qualifying resident aliens who cannot be claimed as a dependent on someone else's return and who has a valid social security number;
- Section 6428(g)(1)(B) requires an eligible individual's spouse to have provided a valid identification number on the most recent tax return the couple jointly filed with the IRS;
- Section 6428 defines a "valid identification number for an adult as a social security number";
- Plaintiffs and/or their spouses possess Individual Taxpayer Identification Numbers ("ITINs");

---

[7] In the News & Media section of its website, Blaise & Nitschke asserts that its lawyers "expect to file several similar complaints in the coming weeks." Significantly, Blaise & Nitschke notes no differences among the cases it has filed. *Id.*

- An ITIN is not a Social Security Number and is not a "valid identification number" as required to qualify for the CARES Act Credit;
- But for the plaintiffs or their spouses lacking social security numbers, Plaintiffs would be eligible for the CARES Act credit;
- None of the Plaintiffs or their spouses were members of the U.S. Armed Forces during the taxable year;
- Plaintiff's choice of whom to marry is fundamental to her autonomy, dignity and self-determination; and
- The CARES Act's and Defendants' failure to provide Plaintiffs advance payment of the CARES Act credit diminishes their personhood.

The causes of action asserted in six of the seven Class Action Complaints state the following similar claims:

- Substantive due process under the Fifth Amendment to the United States Constitution;
- Equal Protection under the Fifth Amendment to the United States Constitution;
- Freedoms of Expression and Association under the First Amendment to the United States' Constitution; and
- Action for Temporary Restraining Order and Preliminary and Permanent injunctions.

One of the non-Blaise & Nitschke Complaints, *R.V. v. Mnuchin,* Case No. 1:20-cv-01102 (D. Md.), does not assert claims for Freedoms of Expression and Association under the First Amendment.  The Complaint filed in that matter demonstrates, however, that the core of the case is the Plaintiffs' claim that the plaintiffs have been improperly denied benefits under the CARES Act due to the

fact that either the Plaintiff Parent or the Plaintiff Parent's spouse does not have a Social Security Number.[8]

## The Classes

Plaintiff in the present case asserts that "[t]here are 1.2 million Americans married to immigrants who do not hold Social Security numbers." (Compl. ¶ 35). "Of these 1.2 million Americans, those who file joint returns and are not in the military are ineligible for a Stimulus Check and deprived of the right(s), benefit(s) and/or privilege(s) conferred upon all other U.S. citizens who otherwise qualify. (Compl. ¶ 35).

The description of the class in the Complaint filed in the present case provides as follows:

> **All United States Citizens married to immigrants that file joint taxes wherein the immigrant-spouses file tax returns using an Individual Taxpayer Identification Number who would have otherwise qualified for the Stimulus Check.**

---

[8] The Plaintiff Children do not assert that they are entitled to direct payments under the CARES Act; only that they have been denied the benefit of their parents receiving such payments.  The Plaintiff Children, however, do not have standing to sue to enforce their parents' purported rights to tax benefits.  *See, e.g., Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 36 (1975).

(Complaint, para. 57) (Emphasis in original).  The descriptions of the classes contained in the three other Blaise & Nitschke Complaints are identical, word-for-word, to the description used in the present case.[9]

The description of the class in each of the three non-Blaise & Nitschke Complaints, although they do not follow the Blaise & Nitschke descriptions of the classes word-for-word, are still essentially the same as the descriptions of the class in the Blaise & Nitschke Complaints and website.

In *Jerysse Uzoegwu v. Steven T. Munuchin,* et al., Case No. 1:20-cv-03264 (S.D.N.Y.) the description of the class is as follows "All individuals, who jointly filed their taxes with a spouse who does not have a social security number, and who did not serve in the United States Armed Forces, and who did not receive their stimulus checks pursuant to the CARES Act because of said filings."  In *Amador v. Steven Mnuchin*, Case No. 1:20-cv-01102 (D. Md.), the class is described as "[a]ll persons who are otherwise qualified for and would have received recovery payments but for the fact that they are excluded by 26 U.S.C § 6428(g)(1)(B) because their spouses lack social security numbers."

---

[9] *See Jane Doe v. Donald Trump, et al.*, Case No. 8:20-cv-00858, ¶ 57 (C.D. Cal.); *John Doe v. Donald J. Trump, et al.,* Case No. 1:20-cv-02531, ¶ 29 (N.D. Ill.); and *Jane Does v. Donald J. Trump, et al.,* Case No. 2:20-cv-00704, ¶ 59 (E.D. Wis.)

In the third non-Blaise & Nitschke Complaint, *R.V. v. Mnuchin,* Case No. 1:20-cv-01102 (D. Md.), the Plaintiffs seek to certify two classes.  The Plaintiffs in this case are seven U.S. citizen children (minors) and their parents.  Both the children and the Plaintiff Parents in this case allege that "the CARES Act intentionally discriminates against U.S. citizen children who have undocumented parents, by denying them the benefit of the Acts economic impact payments for children." (*R.V. v. Mnuchin* Compl. ¶¶ 72 and 85).

The Plaintiff Parents go on to state that they seek to certify a nationwide class for damages described as: "persons whose U.S. citizen children have not received the benefits of economic impact payments for 'qualified children' under the CARES Act solely because at least one of the children's parents is an undocumented immigrant who has no social security number."  (¶ 64).

The second class Plaintiffs in *R.V. v. Mnuchin* seek to certify is a nationwide class described as: "all U.S. citizen children under age 17 who have been or will be denied the benefits of economic impact payments for 'qualified children' under the CARES Act solely because the children have a parent who is an undocumented immigrant who has no social security number." (¶ 57).

Thus, both of the proposed classes in *R.V. v. Mnuchin* include only persons whose families did not receive CARES Act benefits because one or both of the

parents in the family was an immigrant who did not possess a Social Security

Number.

## ARGUMENT

**A.   THE FIRST-TO-FILE RULE SHOULD BE APPLIED IN THE PRESENT CASE TO AVOID DUPLICATIVE LITIGATION**

In *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 888 (7th Cir. 2012),

the Seventh Circuit described the first-to-file doctrine as follows:

> The district court has broad discretion to dismiss a complaint for reasons of wise judicial administration ... whenever it is duplicative of a parallel action already pending in another federal court.

(quoting *Serlin v. Arthur Andersen & Co.,* 3 F.3d 221, 223 (7th Cir.1993)).

In *Hubbard v. Papa John's Int'l, Inc.*, 2019 WL 6119242, at *3 (W.D. Ky.

2019) the court held that "[w]hen actions involving nearly identical parties and

issues have been filed in two different district courts, the court in which the first

suit was filed should generally proceed to judgment." (Citations omitted).[10]  As the

courts have recognized, this practice "conserves judicial resources by minimizing

duplicative or piecemeal litigation and protects the parties and the courts from the

possibility of conflicting results." *Id.* (Citations omitted.).  *See also Wallerstein v.*

*Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1292-93 (N.D. Cal. 2013)

---

[10] The first two cases filed in regard to this matter were both filed on April 24, 2020: *Jerysse Uzoegwu v. Steven T. Munuchin,* et al., Case No. 1:20-cv-03264 (S.D.N.Y.) a non-Blaise & Nitschke case; and *Jane Doe v. Donald J. Trump*, et al., Case No. 1:20-cv-02531 (N.D. Ill.) a Blaise & Nitschke case.

("The first-to-file rule is a generally recognized doctrine of federal comity permitting a district court to decline jurisdiction over an action.  The rule is primarily meant to alleviate the burden placed on the federal judiciary by duplicative litigation and to prevent the possibility of conflicting judgments.  **As such, the rule should not be disregarded lightly**.") (Citations omitted; emphasis added).

In *Chapman v. Progressive Am. Ins. Co.*, 2017 W.L. 3124186, at *1 (N.D. Fla. 2017), the court held that "[a]pplying the first-to-file rule requires evaluation of three factors: (1) the chronology of the two actions; (2) the similarity of the two parties; and (3) the similarity of the issues."

The issue of "whether cases are substantially similar is a question of substance rather than form.  As long as the underlying facts are the same … the fact that the two complaints allege violations of different state laws is not enough to render them substantially dissimilar for purposes of the first-to-file analysis." *Askin v. Quaker Oats Co.*, 2012 WL 517491, at *4 (N.D. Ill. 2012).  *See also Kohn Law Group, Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240-41 (9th Cir. 2015) ("[T]he first-to-file rule does not require exact identity of the parties. Rather, the first-to-file rule requires only substantial similarity of the parties…." The issues in both cases also need not be identical, only substantially similar.  To

determine whether two suits involve substantially similar issues, we look at whether there is 'substantial overlap' between the two suits.") (Citations omitted).

The present case is exactly the type of case where the first-to-file rule should be applied. There are currently seven cases, all filed as class actions, pending in six different federal district courts, making nearly identical allegations that, if they all proceed, will potentially necessitate litigating the exact same facts and law in each of the cases.

There is, however, no reason for all seven of these cases to proceed. *See United States v. Mendoza*, 464 U.S. 154, 159 (1984) ("[No] significant harm flows from enforcing a rule that affords a litigant only one full and fair opportunity to litigate an issue, and … there is no sound reason for burdening the courts with repetitive litigation."). (Citations omitted).

## B.  DISMISSAL OF THIS LAWSUIT IS APPROPRIATE UNDER THE COURT'S INHERENT AUTHORITY TO CONTROL ITS DOCKET

It is well-settled that a district court has broad, inherent power to control its docket to achieve the orderly and expeditious disposition of cases. *See generally Trippe Mfg. Co. v. Am. Power Conversion Corp.,* 46 F.3d 624, 629 (7th Cir. 1995) ("A district court has 'an ample degree of discretion' in deferring to another federal proceeding involving the same parties and issues to avoid duplicative litigation." (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183

(1952)); *Prolitec, Inc. v. ScentAir Techs., Inc.*, 945 F. Supp. 2d 1007, 1008 (E.D. Wis. 2013).

Permitting Plaintiff to proceed with this lawsuit, which raises substantially similar factual and legal issues as six other pending class actions, would be an unnecessary burden on judicial resources and would risk inconsistent rulings. Moreover, Plaintiff will not be prejudiced by the dismissal of this lawsuit, as her counsel in this matter is also challenging the constitutionality of the CARES Act credit in other district courts and seeks the same relief, including class certification, in each instance.

## C.   ALTERNATIVELY, THE COURT SHOULD STAY THE PRESENT CASE UNTIL SUCH TIME AS THE DUPLICATE LITIGATION INVOLVING THE PRESENT CASE NO LONGER POSSESS A RISK

In *Adkins v. J.B. Hunt Transport, Inc.*, 293 F. Supp. 3d 1140, 1149-50 (E.D. Cal. 2018), the court held that, like the power to dismiss a case pursuant to the first–to-file doctrine, "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."

The court in *Adkins* also held that "[i]n evaluating whether to stay proceedings the court is concerned with balancing competing interests and should consider: (1) the potential prejudice to the non-moving party; (2) hardship and

inequity to the moving party if the action is not stayed; and (3) the judicial

resources that would be saved by avoiding duplicative litigation….” *Id.*

A stay in the present case would be appropriate because:

1) The issuance of a stay will not harm Plaintiffs in the present case as the fact and legal issues in the first filed case are the same issues are in the present case and those issues will be tried by the same lawyers that are representing the Plaintiffs in the present case;

2) If a stay is not issued, the Defendant United States will be significantly harmed by having to try the same issues multiple times; and

3) If a stay is not issued, the six courts currently involved in this matter will each have to try the same legal and factual issues as the other courts, resulting in a significant but unnecessary expenditure of judicial resources.

**D.     THE DISMISSAL OR STAY OF THIS CASE UNDER THE FIRST-TO-FILE DOCTRINE WILL NOT ITSELF DENY PLAINTIFF THE OPPORTUNITY TO LITIGATE HER RIGHT TO CLASS CERTIFICATION**

In *Montana v. United States*, 440 U.S. 147, 153 (1979), the Supreme Court

held that:

**To preclude parties from contesting matters they have had a <u>full and fair opportunity to litigate</u> protects their adversaries from the expense and vexation attending multiple lawsuits**, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions. (Emphasis added).

On the other hand, the Supreme Court, in *Taylor v. Sturgelll*, 553 U.S. 880,

892-93 (2008), held that “[a] person who was not a party to a suit generally has not

had a ‘full and fair opportunity to litigate’ the claims and issues settled in that suit.

The application of claim and issue preclusion to non-parties thus runs up against the deep-rooted historic tradition that everyone should have his own day in court."

In *Smith v. Bayer Corp.*, 564 U.S. 299 (2011), the Supreme Court rejected "the **novel and surely erroneous argument** that a non-named class member is a party to the class-action litigation before the class is certified." *Id.* at 313 (Emphasis added; citation omitted). The Court went on to note that "Bayer warns that under our approach class counsel can repeatedly try to certify the same class by the simple expedient of changing the named plaintiff in the caption of the complaint." *Id.* at 316. The Court, however, dismissed Bayer's warning holding that "our legal system relies on principles of stare decisis and comity among courts to mitigate the sometimes substantial costs of similar litigation brought by different plaintiffs. **We have not thought that the right approach (except in the discrete categories of cases we have recognized) lies in binding non-parties to a judgment**." *Id.* at 317 (Emphasis added). Finally, the Court held that "we would expect federal courts to apply principles of **comity** to each other's class certification decisions when addressing a common dispute." *Id.* (Emphasis added).

A year after the Supreme Court decided *Smith v. Bayer Corp.*, the Seventh Circuit, noting that the Supreme Court's reference to "comity" in *Bayer* was "cryptic" and "novel," held that "the effect of the doctrine of comity … unlike res judicata … is a doctrine that does not require but **merely permits** preclusion…."

*Smentek v. Dart*, 683 F.3d 373, 375 and 376 (7th Cir. 2012) (Emphasis added)..

*See also Cleary v. American Capital, Ltd.,* 2014 WL 793984, *3 (D. Mass. 2014)

("The *Smentek* decision makes clear that the doctrine of comity is not a rule of

preclusion, but rather one of deference.").

The holdings in *Smith v. Bayer Corp.* and *Smentek* make clear that unnamed

members of a putative class for which the court has not granted class certification

are not "parties" to the litigation. *Smith v. Bayer Corp.*, 564 U.S. at 315 ("in the

absence of certification under [Fed. R. Civ. P. 23(f)] the precondition for binding

Smith was not met. Neither a proposed class nor a rejected class action may bind

non-parties."). *See also North Sound Capital LLC v. Merck & Co.*, 938 F.3d 482,

492-93 (3d Cir. 2019) ("It is axiomatic that **an unnamed class member is not a**

**party to the class-action before the class is certified**. For class actions seeking

predominantly damages Rule 23 adds that putative class members do not become

party plaintiffs until the time to opt out has elapsed.") (Citations omitted emphasis

in original and added).

Accordingly, if the court grants Defendant's Motion to Dismiss or Stay this

action, since neither of these motions go to the merits of the case, and since the

Court has neither granted nor denied class certification at the present time (nor has

any of the other five Courts hearing claims similar to those being made in the

present case), neither the named plaintiff in this case, Jane Doe, nor the members

of the putative class in the present case will be bound on the issue of class certification or on the merits as a result of how this court rules on this Motion to Dismiss or to Stay.

Further, since the members of the putative class in the present case meet the descriptions of the proposed classes in each of the six remaining cases, if any of the courts hearing those cases grant class certification, the named plaintiff in this case, Jane Doe, as well as all of the members of the putative class in this case, will become members of the class that is certified.

Should none of the other five courts with pending class actions related to the present case grant class certification, and should the named plaintiff in this case, notwithstanding the prior denials, still want to proceed, she could refile this case and move for class certification. This Court would then have to decide whether or not it should allow the case to continue or, based on the earlier denials of certification, apply the rule of comity and its own discretion to preclude further litigation in this matter.

In any event, it is clear that the Court's granting the pending Motion to Dismiss or to Stay will not, itself, deny the named plaintiff or unnamed class members the opportunity obtain class certification regarding the issues involved in this matter.

## Conclusion

Since the present case, which raises essentially the same allegations as six other pending cases, was not the first case to be filed, this Court, to avoid the unnecessary expenditure of substantial judicial and party resources and to avoid the risk of conflicting judgments, should exercise its inherent authority to dismiss or stay this case.

Respectfully submitted,

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

 _s/ Charles P. Hurley_____
CHARLES P. HURLEY
Washington, D.C. Bar No. 490793
SAMUEL P. ROBINS
WI Bar No. 1094149
Trial Attorneys
Tax Division
U.S. Department of Justice
P.O. Box 7238
Ben Franklin Station
Washington D.C. 20044
Telephone: (202) 305-6717
Charles.P.Hurley@usdoj.gov

Attorneys for the United States